UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CONNIE RAY EDMISTON | ) | |
| | ) | |
| v. | ) | 4:07-cv-39\4:04-cr-15 |
| | ) | *Edgar* |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM**

Connie Ray Edmiston ("Edmiston") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Criminal Court File No. 89].[1] Edmiston's claims are difficult to decipher, as he has raised three factually unsupported claims in his § 2255 motion, and, in his supporting documents, it appears that he is attempting to raise other factually unsupported claims. The Court discerns that he has raised several alleged instances of ineffective assistance of counsel in addition to alleging the government breached an agreement not to prosecute him, lacked jurisdiction to prosecute him, and prosecuted him in bad faith. For the reasons which follow, Edmiston's § 2255 motion is without merit, frivolous, and will be **DENIED** [Criminal Court File No. 89].

**I.**     **28 U.S.C. § 2255 - Standard of Review**

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255.

---

[1] Citations to docket entries will refer to the criminal court case file. All filings in this § 2255 proceeding shall be filed in the criminal court case file (4:04-cr-15).

1

Under Rule 4 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972)*; O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo,* 454 F.2d at 53; *O'Malley,* 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood,* 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas,* 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. 339, 354 (1994); *Grant v. United States,* 72 F.3d 503, 506 (6th Cir.), *cert. denied,* 116 S. Ct. 1701, 134 L. Ed. 2d 800 (1996).

## II. Procedural Background

Edmiston pled guilty on March 9, 2005, (the date on which his trial was to begin) without the benefit of plea agreement, to Count One of a five-count indictment. Count One charged Edmiston with conspiring to knowingly, intentionally, and without authority violate Title 21, United States Code, Section § 841(a)(1) and (b)(1)(A); that is, to distribute fifty grams or more of a mixture and substance containing cocaine base (crack), a Schedule II controlled substance, in violation of 21 U.S.C. § 846.

Edmiston was sentenced to 154 months imprisonment and five years supervised release. Edmiston's conviction and sentence were affirmed on direct appeal on June 27, 2006 [Criminal Court File No. 88]. On June 25, 2007, Edmiston timely filed this § 2255 motion (Criminal Court File No. 89).[2]

Edmiston now challenges his convictions claiming: (1) he received ineffective assistance of counsel because his trial counsel completely failed to perform her duties as his lawyer;[3] (2) he had an agreement with the federal government that was breached; (3) his conviction was based on perjured testimony given by one of the government's law enforcement witnesses; (4) the federal government did not have jurisdiction over his state drug charges; (5) the federal government's prosecution of him was vindictive; and (6) the federal government acted in bad faith by prosecuting

---

[2] After filing the instant § 2255 motion, Edmiston filed a motion to reduce sentence which resulted in him being resentenced to 123 months imprisonment pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 706 (Criminal Court File Nos. 102, 112).

[3] In his supporting memorandum, Edmiston also claims counsel was ineffective for failing to raise the five other claims he raises in this § 2255 proceeding.

3

him for conspiracy without evidence of a conspiracy and relying upon inaccurate statements of an unindicted co-conspirator.

### III. Factual Background

The underlying facts of his case are taken from the Presentence Investigation Report ("PSR"):

> 13. On March 30, 2001, a confidential informant (CI) working with the Fayetteville, Tennessee, Police Department, purchased .2 grams of cocaine from defendant Connie Edmiston at Edmiston's home in Fayetteville. The CI advised police that Edmiston had the crack cocaine concealed inside the band of his ball cap and that the cap was lying on the bed in the bedroom. [The cocaine was in rock form and was submitted to the Tennessee Bureau of Investigation (TBI) for laboratory analysis. The lab report reflects the substance only as "cocaine" as they did not analyze it for the presence of cocaine base (crack).]
>
> 14. On August 22, 2001, a CI working with the Fayetteville Police Department purchased .2 grams of cocaine from Edmiston. [The cocaine was in rock form and was submitted to the Tennessee Bureau of Investigation (TBI) for laboratory analysis. The lab report reflects the substance only as "cocaine" as they did not analyze it for the presence of cocaine base (crack).]
>
> 15. On September 5, 2001, officers of the Fayetteville Police Department served arrest warrants on Connie Edmiston at the home he shares with his mother. While serving the warrants, officers observed drug paraphernalia in plain view at the residence. Officers report they obtained Mr. Edmiston's permission to search the residence (although the defendant has contended he never granted them such permission) and they confiscated 4.8 grams of cocaine base (laboratory-tested) from the right, front bedroom at the home.
>
> 16. Fayetteville Police encountered Connie Edmiston again on August 2, 2002, when officers stopped a truck being driven by Edmiston. The passenger, Darryl T. Brown, fled from the officers when the vehicle came to a stop. After a foot pursuit, officers apprehended Brown and found 18.7 grams of cocaine base (laboratory-tested) in his possession. The truck was registered to Michael Limbaugh. Mr. Limbaugh later provided the following statement to police:
>
>> On Friday, August 2nd I was at 505 Kawanis Street to obtain drugs, crack cocaine. Connie Edmiston borrowed my truck saying he was going to the store. Was stopped and arrested with someone else in possession of drugs. This statement was of my own free will. Officer made no promise or threats.

17.     On April 10, 2003, agents of the 17th Judicial District Drug and Violent Crime Task Force (DTF) met with a CI in Fayetteville. The CI informed the agents that Connie Edmiston was at 800 Shawnee Drive (the residence of Timothy Henderson) distributing crack cocaine. The CI was sent to the location to make a purchase and Edmiston informed the CI that he would have to use the CI's vehicle to go pick up the crack cocaine. The defendant left in the CI's vehicle, leaving the CI at Henderson's residence, and returned a short time later with .3 grams of cocaine base (laboratory-tested). This transaction was audio-taped.

18.     On April 22, 2003, the DTF dispatched the CI to Edmiston's residence at 505 Kiwanis Avenue to purchase crack cocaine. When the CI arrived, the defendant was not there, but he returned soon thereafter. Edmiston again asked to use the CI's vehicle to retrieve the cocaine and the CI allowed him to do so. The defendant returned after a short period of time and delivered .4 grams of cocaine base (laboratory-tested) to the CI.

19.     The DTF engaged the CI again on May 6, 2003, when they sent the CI to Connie Edmiston's residence for another crack cocaine purchase. Edmiston asked to use the CI's vehicle to retrieve the crack cocaine and the CI agreed to allow him to do so. The defendant drove to Timothy Henderson's residence and returned with .2 grams of cocaine base (laboratory-tested) for the CI. During the course of the transaction, which was audio-taped, the CI inquired about purchasing a larger quantity of crack cocaine. During the conversation, Connie Edmiston revealed that his source of crack was in Nashville.

20.     Connie Edmiston was arrested by local authorities in July of 2003 on drug distribution charges. He was indicted in Lincoln County Criminal Court for Sale and Delivery of Schedule II (Cocaine Base) in Docket ##SO300080, SO300081 and SO300082. Mr. Edmiston entered guilty pleas in those cases but subsequently withdrew his pleas, telling the judge that he was not guilty of the charges. At that time, federal authorities accepted the case for federal prosecution. Connie Ray Edmiston was indicted in the Eastern District of Tennessee in April of 2004. His state charges were dismissed in May of 2004 because he was being prosecuted federally. A Superseding Indictment was filed against Mr. Edmiston in U.S. District Court in January of 2005.

21.     In November of 2003, federal officials met with Timothy Henderson to discuss drug trafficking in Fayetteville, Tennessee. Mr. Henderson identified defendant Connie Edmiston as one of his crack cocaine distributors from 1999 to 2003. Henderson revealed that he and another individual would travel to Nashville to obtain the crack cocaine from his source there. He would return to Fayetteville and give some of the crack cocaine to the defendant to distribute for him. According to prosecutors and law enforcement, Henderson would testify that Edmiston sold well over 50 grams of crack cocaine for him during the course of their association.

DRUG QUANTITIES ATTRIBUTABLE TO THE DEFENDANT

22. The crack cocaine transactions yield a total drug quantity of 24.4 grams of cocaine base (crack) and .4 grams of laboratory-tested cocaine hydrochloride (which was probably also crack cocaine - but cannot be proven to be such). The crack cocaine would result in a base offense level of 28.

23. However, law enforcement personnel have interviewed Timothy Henderson, for whom Connie Edmiston was distributing crack cocaine, and Henderson has estimated that the defendant distributed at least 50 grams of cocaine base for him during their association (from 1999 to 2003). Because this quantity yields the higher base offense level (32) and would encompass the other quantities confiscated during the course of the offense, this is the quantity which will be used for guideline purposes. Furthermore, Mr. Edmiston, in pleading guilty, admitted his distribution of at least 50 grams of cocaine base (crack).

## IV. Discussion

### A. Ineffective Assistance of Counsel

#### 1. *Applicable Law*

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.*, counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 689-90. A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen v. Scroggy*, 99 F.3d 1302,
6

DRUG QUANTITIES ATTRIBUTABLE TO THE DEFENDANT

22. The crack cocaine transactions yield a total drug quantity of 24.4 grams of cocaine base (crack) and .4 grams of laboratory-tested cocaine hydrochloride (which was probably also crack cocaine - but cannot be proven to be such). The crack cocaine would result in a base offense level of 28.

23. However, law enforcement personnel have interviewed Timothy Henderson, for whom Connie Edmiston was distributing crack cocaine, and Henderson has estimated that the defendant distributed at least 50 grams of cocaine base for him during their association (from 1999 to 2003). Because this quantity yields the higher base offense level (32) and would encompass the other quantities confiscated during the course of the offense, this is the quantity which will be used for guideline purposes. Furthermore, Mr. Edmiston, in pleading guilty, admitted his distribution of at least 50 grams of cocaine base (crack).

## IV. Discussion

### A. Ineffective Assistance of Counsel

#### 1. *Applicable Law*

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.*, counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 689-90. A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen v. Scroggy*, 99 F.3d 1302,

1311 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a defendant challenges his guilty plea, to establish the prejudice prong, he must demonstrate that without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), (quoting *Strickland v. Washington*, 466 U.S. at 690. "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

As an initial matter, the Court observes that Edmiston has failed to meet the prejudice prong of his claim of ineffective assistance of counsel because he has failed to allege, much less demonstrate, a reasonable probability that he would have gone to trial but for counsel's alleged errors. Indeed, Edmiston has not requested any specific relief. Thus, Edmiston has failed to demonstrate any resulting prejudice as a result of counsel's alleged ineffective assistance. Furthermore, as explained below, Edmiston has failed to demonstrate counsel was ineffective.

    2.    *Counsel's Failure*

Edmiston claims counsel "was fired (6) times by me for not doing her job at all. She also told me she was going to help the court to get me 12 years or more and I wrote the Federal Bar A.S.A to get this on record but they never responded." [Criminal Court File No. 89]. In his supporting memorandum, Edmiston claims "I did not sign my plea in Federal Court because I told Mrs. Schemel[4] if there were 50 grams or more I would not and she said ok just enter the plea for now." [Criminal Court File No. 90].[5]

Edmiston has failed to provide any factual support for his ineffective assistance of counsel claim in violation of Rule 2(b) of the Rules Governing Section 2255 Proceedings in the United States District Court. Consequently, Edmiston's factually unsupported allegations are insufficient to support an evidentiary hearing or a request for relief under § 2255. *See Oliver v. United States*, 961 F.2d 1339, 1343 n. 5 (7th Cir. 1992) ("No hearing is required in a section 2255 proceeding if the . . . allegations in the motion are unreasonably vague [or] conclusory[.]").

Even assuming these allegations are sufficient, Edmiston has neither alleged nor demonstrated a reasonable probability that, but for his counsel's errors and deficient performance he would not have pleaded guilty and would have insisted on going to trial on all of the charges against him. Thus, the record does not reflect that Edmiston suffered any prejudice. Furthermore, the record reveals that counsel did perform her job, as she filed several motions on Edmiston's behalf which the Court ultimately denied. Edmiston has not identified, nor does the record reveal, any evidence or argument that counsel failed to present that would have altered the outcome of his

---

[4] This trial counsel was Edmiston's third appointed lawyer.

[5] Edmiston did not enter into a plea agreement but instead, entered a plea on the first day of his trial. Accordingly, his claim that he did not sign his plea in court and counsel told him to just enter a plea does not raise a constitutional violation.

8

criminal proceedings. Consequently, Edmiston simply has not presented any evidence demonstrating counsel's performance was deficient.

Edmiston's claim that he refused to sign a plea agreement in federal court admitting he was involved with 50 grams or more of cocaine base and that counsel, nevertheless, advised him to "just enter the plea now[,]" is disingenuous. Edmiston did not sign a plea agreement in federal court because he did not enter into a plea agreement with the government, but rather, he entered a guilty plea without the benefit of a plea agreement on the first day of his jury trial [Criminal Court File No. 90].

The record reflects that counsel's recommendation to Edmiston to plea guilty was in his best interest, as it does not appear that he has a viable defense to the conspiracy charge. According to the government's proof, Edmiston conspired with others to distribute 50 grams or more of a mixture and substance containing crack cocaine. In addition, according to the government, it is able to prove Edmiston had sold crack cocaine on a number of occasions in controlled buys, some of which were recorded. Timothy Henderson would have testified about his and Edmiston's involvement in the purchase, transportation, cooking, and distribution of crack cocaine and that the quantity of crack cocaine involved in the conspiracy exceeded 50 grams. There is no credible evidence in the record demonstrating counsel's advice to enter a guilty plea amounted to deficient performance or prejudiced Edmiston.

As previously noted, Edmiston's allegation that counsel stated she would help the court give him 12 years or more is factually unsupported and insufficient to state a claim. Even if it sufficiently states a claim and assuming, which the Court does not find, that it is true, there is nothing before this Court indicating Edmiston suffered any prejudice based on counsel's alleged statement. To the

9

extent Edmiston claims counsel was ineffective for failing to raise the remaining claims he raises in his § 2255 motion, he has failed to state a claim, because, as explained below, all of his remaining claims lack merit. Since counsel cannot be deemed deficient for failing to raise meritless claims, Edmiston will be **DENIED** any relief on his ineffective assistance of counsel claim.

### B. Breached Agreement

In this claim, Edmiston claims the government breached an agreement it had with him not to prosecute him in federal court if he pled guilty to state charges that were based on the same criminal conduct at issue in this case. Edmiston was originally indicted on September 16, 2003, by the Lincoln County Grand Jury for three charges of sale and delivery of cocaine.[6] Assistant United States Attorney General Perry Piper agreed with Edmiston's state counsel not to pursue federal charges if Edmiston pleaded guilty in state court. Edmiston pleaded guilty on January 12, 2004, in Lincoln County Criminal Court. Because Edmiston professed his innocence to the probation officer, the state judge, based on Edmiston's statement in the presentence report, set aside the plea and set the matter for trial. Edmiston was indicted in Federal Court in April of 2004. Edmiston raised this same claim during his federal criminal proceedings when he filed a motion to dismiss the criminal charges against him, claiming the government violated an agreement not to seek a federal indictment if Edmiston pleaded guilty to state charges for the same conduct [Criminal Court File No. 50].

As previously noted, Edmiston initially pleaded guilty to the state charges, but in a pre-sentence report he repeatedly professed his innocence to the charges and based on the representations made in the pre-sentence report, the state court withdrew Edmiston's guilty plea on February 17, 2004, and set the case for trial [Criminal Court File Nos. 60 61]. Therefore, this Court

---

[6] These charges are found in Counts 2-4 of Edmiston's federal indictment.

found that Edmiston, not the government, violated the agreement and denied his motion to dismiss [Criminal Court File No. 62].

This Court fully considered this claim during Edmiston's federal criminal pre-trial proceedings, and he may not relitigate this issue absent exceptional circumstances or an intervening change in case law. *See Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999) (where petitioner litigated drug type before the district court and on direct appeal, he could not use his § 2255 motion to relitigate that issue) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996) and *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996)); *also see Davis v. United States*, 417 U.S. 333, 342 (1974) (intervening change in the law permitted defendant to relitigate, in at § 2255 proceeding, an issue decided on direct review). Therefore, absent exceptional circumstances or an intervening change in the law, this claim provides no basis for relief.

### C. Perjured Testimony

Edmiston claims Detective Richard Tucker of the Fayetteville, Tennessee Police Department committed perjury when he testified during the suppression hearing and that counsel failed to impeach his testimony. Specifically, Edmiston claims, "[t]he 6th Circuit could found [sic] Detective tucker [sic] credible on the stand when the only thing they had to do was check with the Fayettville[,] Tennessee Police Department records to see who was liing [sic] he was a government witness who swore not to lie on the stand under oath." [Criminal Court File No. 89].

Edmiston has failed to provide any factual support for his perjured-testimony claim in violation of Rule 2(b) of the Rules Governing Section 2255 Proceedings in the United States District Court. Consequently, Edmiston's factually unsupported allegations are insufficient to support an evidentiary hearing or a request for relief under § 2255. *See Oliver v. United States*, 961 F.2d 1339,

11

1343 n. 5 (7th Cir. 1992) ("No hearing is required in a section 2255 proceeding if the . . . allegations in the motion are unreasonably vague [or] conclusory[.]").

The Court observes, however, that Edmiston moved to suppress all evidence seized as a result of the search of his home i.e., 4.8 grams of cocaine base. Edmiston did not challenge the voluntariness of his consent, instead, he averred that he never consented to the search of his residence. Detective Tucker testified Edmiston gave verbal consent to search with the stipulation that he must be permitted to be present during the search, but he refused to sign a consent form. Thus, the issue presented a credibility issue for the Court.

This Court concluded that Detective Tucker was credible as his credibility was never questioned during the hearing, but Edmiston's credibility was repeatedly attacked, "illuminating one specific discrepancy in Edmiston's testimony: Edmiston testified that he did not use cocaine while on release in this case; however, Edmiston admitted that he tested positive for cocaine in a test conducted by pretrial services while he was on release." [Criminal Court File No. 62].

Edmiston is not entitled to any relief on this perjury claim, as he has not demonstrated that Detective Tucker committed perjury. In addition, Edmiston is not entitled to any relief on his claim that counsel was ineffective for failing to impeach Detective Tucker. Edmiston has not identified any evidence or contradictory statements with which counsel would have been able to impeach Detective Tucker. Thus, Edmiston has failed to demonstrate that but for counsel's performance at the suppression hearing the evidence in issue would have been suppressed.

Not only has Edmiston not demonstrated Detective Tucker's credibility could have been impeached, he has not demonstrated he was prejudiced by the evidence that was not suppressed. This is so, because the United States Probation Officer used the quantity of 50 grams of cocaine base

based on Timothy Henderson's estimate that Edmiston distributed at least 50 grams of cocaine base for him during their association from 1999 to 2003 when calculating his guidelines. (Presentence Investigation Report ("PSR") ¶ 23). Moreover, Edmiston pleaded guilty and admitted his distribution of at least 50 grams of cocaine base (crack). Consequently, even assuming counsel was ineffective for failing to impeach Detective Tucker, Edmiston did not suffer any prejudice.

Based on the record before the Court, it cannot find that the credibility of Detective Tucker could have been impeached by counsel but even if it could have, it would not have had any effect on Edmiston's sentence. Accordingly, Edmiston's claims that Detective Tucker committed perjury and that counsel was ineffective for failing to impeach him are without merit and will be **DENIED**.

### D. Claims Against the Government

Edmiston's last three claims are against the federal government. First, he contends the government lacked jurisdiction over his state drug charges. Second, he claims the federal government's prosecution of him was vindictive. Finally, he contends the federal government acted in bad faith by prosecuting him for conspiracy without evidence of a conspiracy and by relying upon his co-conspirator's statements. The Court will address these claims separately.

#### 1. *Jurisdiction*

In his supporting documents, Edmiston contends he was under the jurisdiction of the State and that the federal government lacks jurisdiction in this case. Title 28 U.S.C. § 2255 specifically provides relief when the sentencing court lacks jurisdiction. Failure to present a jurisdictional argument at a prior stage of the proceedings does not prevent Edmiston from collaterally attacking his conviction on jurisdictional grounds in this § 2255 proceeding. *See Thor v. United States*, 554 F.2d 759, 762 (5th Cir. 1977) ("Jurisdictional defects are always subject to attack under section

13

2255, as that statute expressly states."). Likewise, Edmiston's guilty plea to a federal offense does not waive a lack of subject matter jurisdiction. *See United States v. Gotches*, 547 F.2d 80, 82 (8th Cir. 1977) (defendant who pleads guilty "waives all non-jurisdictional claims") and *United States v. Broncheau*, 597 F.2d 1260, 1262 n. 1 (9th Cir.) (Petitioner who had pleaded guilty was permitted to proceed on claim attacking jurisdiction in § 2255 proceeding), *cert. denied*, 444 U.S. 859 (1979).

Title 18 U.S.C. § 3231 provides: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." When a federal law is violated, the permission of the state where the offender committed his crime against the United States is not a prerequisite for the United States to exercise jurisdiction. *See United States v. Sitton*, 968 F.2d 947, 953 (9th Cir. 1992), *cert. denied*, 507 U.S. 929 (1993); *United State v. Blevins*, 999 F.2d 540 (6th Cir. July 6, 1993), *available at* 1993 WL 243765, at *1 ("Federal courts have exclusive jurisdiction over offenses against the laws of the United States . . .; the permission of the states is not a prerequisite to exercise of that jurisdiction.") (internal quotations and citations omitted). Thus, the question of ownership of property on which the offense occurred is not to be considered when the crime is specifically prohibited by federal criminal statutes. *See United States v. Burchett*, 12 F.3d 214 (6th Cir. 1993), *available at* 1993 WL 473698, *1. The Sixth Circuit has rejected similar challenges to federal jurisdiction over a charged violation of a federal criminal statute concluding that such an challenge "ignores the basic principles of federalism." *United States v. Hamilton*, 263 F.3d 645, 655 (6th Cir. 2001) ("The fact that Kentucky has sovereignty within its boundaries does not bar the United States from having concurrent jurisdiction to indict and prosecute Hamilton for federal crimes occurring within those same boundaries."). Consequently, the federal government has jurisdiction to prosecute federal offenses

14

committed in Tennessee and pursuant to 28 U.S.C. § 123, which provides that the jurisdiction of the Eastern District of Tennessee includes Lincoln County, Tennessee (where Edmiston's crimes were committed), this Court had jurisdiction over Edmiston's criminal proceedings.

Accordingly, Edmiston's claim that the federal government lacked jurisdiction over him and his case is clearly without merit, and this claim will be **DENIED**.

*2.     Vindictive Prosecution*

Edmiston's vindictive prosecution claim is nonsensical. Edmiston contends his prosecution was "vindictive because of the time and the nature in the unnecessary delay of the charges." [Criminal Court File No. 90]. Edmiston's claim of unnecessary delay is belied by the record.

The record reflects that Edmiston pled guilty to a conspiracy to distribute a mixture and substance containing crack cocaine; the charged conspiracy period began in or about 1999 and continued until approximately June 2003. Initially, the government agreed to permit Edmiston to be prosecuted in state court. On January 15, 2004, Edmiston filed a petition to enter a plea of guilty in state court [Criminal Court File No. 90]. Edmiston subsequently denied his guilt to the state probation officer preparing his sentencing report, thus the state court withdrew Edmiston's guilty plea on February 17, 2004 [Criminal Court File No. 62, p. 9-10]. Approximately two months later, Edmiston was indicted by a federal grand jury [Criminal Court File No. 2].

"A prosecutor vindictively prosecutes when he acts to deter the person prosecuted from exercising a protected right." *United States v. Branham*, 97 F.3d 835, 849 (6th Cir. 1996) (citations omitted). "To prove vindictive prosecution, the defendant must demonstrate that the prosecutor has some 'stake' in deterring the defendant's exercise of constitutional rights, and that the prosecutor's conduct was somehow unreasonable." *Id*. at 859-60 (citations omitted). In *United States v. Suarez*,

15

263 F.3d 468 (6th Cir. 2001) the Sixth Circuit reiterated their previous holding "that in order to show vindictive prosecution there must be (1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; [and] (4) the intent to punish the defendant for exercise of the protected right." *Id.* at 479 (citations omitted). In addition, the Sixth Circuit has determined that "if the charges are brought simply as the result of failure of the plea bargaining process, they are not vindictive." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (citations omitted). This is what happened here; there was a failure of the plea bargaining process. Edmiston has presented no evidence to establish vindictiveness, thus this claim is facially insufficient to warrant an evidentiary hearing or § 2255 relief.

Edmiston's allegation of unnecessary delay of indictment does not state a claim for vindictive prosecution and nothing in the record supports a vindictive prosecution claim. Accordingly, Edmiston will be **DENIED** relief on this claim.

   *3. Bad Faith*

In his final claim, Edmiston's argues the government acted in bad faith by prosecuting him for conspiracy when there was no evidence of any conspiracy and no indicted co-conspirators. As stated in Section III above, there was sufficient evidence demonstrating Edmiston was involved in a conspiracy to distribute cocaine base (crack). In addition, the absence of a named co-conspirator in the indictment is inconsequential. The Sixth Circuit has held that "[w]here a defendant conspires with un-indicted co-conspirators, a defendant may be convicted of a conspiracy." *United States v. Otobo*, 995 F.2d 1068 (6th Cir. 1993), *available at* 1993 WL 196053, *3, (citing and quoting *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991)). In *United States v. Rey*, the Sixth Circuit held

16

that:

> A defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction. As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. "It is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet."

*Id.* at *3.

Accordingly, the absence of an indicted co-conspirator is of no consequence to the validity of Edmiston's conviction.

Edmiston further claims that the government acted in bad faith when they relied upon statements made by Timothy Henderson, Edmiston's co-conspirator, as their factual basis for his conspiracy conviction. Without providing any factual support, Edmiston claims Timothy Henderson ("Henderson"), an unindicted co-conspirator, made inconsistent and unreliable statements. Edmiston's claim regarding inconsistent and unreliable statements by Henderson was waived when he entered his plea of guilty,[7] unless he can show his guilty plea was involuntary. *See*

---

[7] During his rearraignment, Edmiston agreed to the following facts presented by the government as their factual basis and confirmed the facts were true and that he was pleading guilty because he was in fact guilty:

> Your Honor, if the case were going to go to trial today, the government's proof concerning the conspiracy would have consisted of the testimony of Timothy Henderson and perhaps Jimmy Bean. Mr. Henderson would state that on several occasions he would travel from Lincoln County, Fayetteville, to Nashville. Mr. Edmiston would accompany him. And Mr. Henderson would purchase quantities of powder or crack cocaine and come back to Fayetteville. On occasion, Mr. Edmiston would assist Mr. Henderson in cooking the powder into crack. On occasion, Mr. Edmiston would keep the cocaine on him when they were coming back from Nashville in order, in case, this is what Mr. Henderson would testify to, in case they were pulled over by law enforcement, Mr. Edmiston would have a

17

*Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not there after raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *Franklin v. United States,* 589 F.2d 192, 194-95 (5th Cir. 1979) (guilty plea waives claims regarding *Miranda* warnings, coerced confessions, perjury, and illegal searches and seizures in a § 2255 proceeding). Edmiston has not challenged the validity of his guilty plea. Nor does it appear from the record in this case that his guilty plea was anything other than knowingly and voluntarily. Therefore, Edmiston's voluntary and unconditional plea waived any right he might have in pursuing this claim in this § 2255 proceeding.

Nevertheless, even if this claim was properly raised in this proceeding, other than his bald assertion that Henderson made inconsistent and unreliable statements, Edmiston has not presented any evidence of any inconsistent or unreliable statement made by Henderson. Edmiston has the burden of proving he is entitled to relief and he has not met his burden. For these reasons, relief will be **DENIED** on this claim.

---

better opportunity to get rid of it.

Also, the proof would show that Mr. Edmiston has distributed small quantities of crack cocaine in the Fayetteville area. If this case had gone to trial today, Mr. Henderson would have testified that the quantity of crack involved in the conspiracy would have exceeded 50 grams. And that would have been the government's proof[.]

[Criminal Court File No. 81, Rearraignment Transcript, pp. 15-16].

## V. Conclusion

For the reasons set forth above, the Court concludes Edmiston has failed to present any facts which establish that his conviction or sentence is subject to collateral attack under 28 U.S.C. § 2255. Accordingly, Edminston's instant § 2255 motion is **DENIED** [Court Doc. 89].

A separate judgment will enter.

		*/s/ R. Allan Edgar*
		R. ALLAN EDGAR
		UNITED STATES DISTRICT JUDGE